IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHNNY HOWARD SMITH,                )
                                    )
            Petitioner,             )
                                    )
v.                                  )     Case No.  CV 99-AR-1519-S
                                    )
RON JONES, Warden;                  )
ATTORNEY GENERAL OF                 )
THE STATE OF ALABAMA,               )
                                    )
            Respondents.            )

**MEMORANDUM OPINION**

This is an action by an Alabama state prisoner pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of the conviction for first-degree robbery, attempted murder, and conspiracy to commit robbery that he received in the Madison County Circuit Court on October 23, 1996. The petitioner, Johnny Howard Smith, filed his *pro se* petition for writ of habeas corpus on June 11, 1999. He is incarcerated at the St. Clair Correctional Facility in Springville, Alabama.

**PROCEDURAL HISTORY**

On October 23, 1996, the petitioner was convicted after a jury trial of first degree robbery, attempted murder, and conspiracy to commit robbery in the Circuit Court of Madison County. He was

sentenced to life without parole on the first degree robbery and attempted murder judgments and to life on the conspiracy judgment, with sentences to run concurrently. Petitioner appealed his conviction to the Alabama Court of Criminal Appeals, raising four issues: (a) that the trial court erred in allowing a co-conspirator to testify because the State had not proved the existence of a conspiracy; (b) that the State did not corroborate the accomplices' testimony; (c) that the trial court erred in allowing a witness to testify to what her thoughts were without having a basis of knowledge as to the underlying facts; and (d) that the trial court erred in failing to change venue because of extensive pretrial publicity. The Court of Criminal Appeals affirmed petitioner's conviction on October 31, 1997. Petitioner filed an application for rehearing, which was denied on December 19, 1997. Petitioner did not seek *certiorari* with the Alabama Supreme Court.

Petitioner also filed a petition in the trial court pursuant to Alabama Rule of Criminal Procedure 32, raising claims that (a) the assistance of trial and appellate counsel was ineffective; (b) the trial court abused its discretion in failing to change venue; and (c) the trial court erroneously failed to grant petitioner's motion for acquittal based on lack of corroborative

evidence.   The  trial  court  denied  the  Rule  32  petition  on
October  28,  1998.   Petitioner  appealed  and  the  Alabama  Court  of
Criminal  Appeals  affirmed  the  denial  on  March  26,  1999.   Petitioner
then  filed  a  petition  for  writ  of  *certiorari*  with  the  Alabama
Supreme  Court,  which  was  stricken  for  noncompliance  with  Rule  39  of
the  Alabama  Rules  of  Appellate  Procedure  by  order  dated  May  14,
1999.

The  petitioner  filed  the  instant  *pro se*  petition  for  writ  of
habeas  corpus  on  June  11,  1999,  raising  the  following  issues:
(1)  that  the  petitioner  was  deprived  of  his  right  to  a  fair  trial
based  on  the  trial  court's  denial  of  his  motion  to  change  venue;
(2) that  the  petitioner  was  deprived  of  his  right  to  a  fair  trial
based  on  the  failure  of  the  state  to  adequately  corroborate  the
accomplices'  testimony;  (3)  that  the  petitioner  was  denied  a  fair
trial  because  a  witness  was  allowed  to  testify  as  to  her  thoughts,
absent  a  basis  of  knowledge  as  to  the  underlying  facts;  (4)  that
petitioner  was  denied  effective  assistance  of  trial  counsel  because
counsel  failed  to  object  to:  (a)  improper  jury  instructions
concerning  the  burden  of  proof  on  the  issue  of  intent;  (b)  the
introduction  of  petitioner's  prior  bad  acts;  (c)  the  judge's  ruling
on  questions  about  a  witness's  alleged  bias;  (d)  testimony

3

concerning petitioner's post-arrest silence; and (5) that petitioner was denied effective assistance of appellate counsel because counsel failed to raise on appeal the omissions of trial counsel, as set forth *supra*.

Pursuant to the court's order to show cause, the respondents filed an answer on July 28, 1999, supported by exhibits. By order of July 30, 1999, the parties were notified that the petition would be considered for summary disposition, and the petitioner was notified of the provisions and consequences of this procedure under Rule 8 of the <u>Rules Governing § 2254 Cases</u>. The petitioner filed a traverse in response on August 30, 1999.

**PROCEDURAL DEFAULT**

<u>1. O'Sullivan v. Boerckel</u>

The respondents assert that all of the petitioner's claims are due to be dismissed as procedurally defaulted. Petitioner's first three claims were raised on direct appeal to the Alabama Court of Criminal Appeals. After the Alabama Court of Criminal Appeals dismissed the claims, the petitioner made no effort to petition for writ of *certiorari* to the Alabama Supreme Court. The petitioner's remaining claims assert ineffective assistance of trial and

4

appellate counsel (claims 4 and 5).  These same claims were raised in petitioner's Rule 32 petition and were appealed to the Alabama Court of Criminal Appeals; however, the claims apparently never were properly presented to the Alabama Supreme Court because that court dismissed the petition for writ of *certiorari* for noncompliance with Rule 39.  It is not clear from the record the basis on which Rule 39 precluded the petition for writ.

It appears that petitioner failed to properly seek discretionary review before petitioning this court for habeas relief.  The Supreme Court has determined that failure to seek discretionary review precludes this court from examining the petitioner's claims on the merits.  <u>O'Sullivan v. Boerckel</u>, 119 S. Ct. 1728, 526, U.S. 838, 144 L. Ed. 2d 1 (1999).

It is well settled that before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  Exhaustion requires the state prisoner to give the state courts a full and fair opportunity to act on his claims before he presents them to a federal court through a habeas petition.  <u>O'Sullivan</u>, 119 S. Ct. at 1731; 28 U.S.C. § 2254(b)(1). The question of which state remedies must be invoked in order to satisfy the exhaustion requirement, which had been the subject of

a conflict in the federal Courts of Appeals, was definitively settled by the Supreme Court in O'Sullivan.

In O'Sullivan, the court examined the habeas petition of an Illinois state prisoner who had appealed his claims to the Appellate Court of Illinois, but had failed to seek certiorari to the Illinois Supreme Court. Id. The court examined the language of § 2254(c), which requires the prisoner to present his claims to any state court in which "he has the right under the law of the State to raise, by any available procedure, the question presented." Id. at 1732. Because Illinois had established a two-tiered appellate review system in which prisoners have the right to present their claims to the highest court, albeit through a discretionary review procedure, the court found that the prisoner could not assert that review in the Illinois Supreme Court is "unavailable" to him. Id. at 1732-33.

Similarly, Alabama offers a two-tiered system of appellate review. As in Illinois, access to the higher court of the state is available only at the court's discretion. However, just as in O'Sullivan, the petitioner in the instant case has offered no explanation as to why this review was "unavailable" to him. Consequently, in keeping with the requirement made clear in

6

O'Sullivan, a petitioner seeking habeas review in federal court must first file a petition for discretionary review with the Alabama Supreme Court. See id. at 1733.

The petitioner at bar failed to file any petition for discretionary review with respect to his first three claims. There is no dispute that the opportunity to seek the discretionary review is no longer available to the petitioner. The time for filing such a petition has long passed. As a result, petitioner's failure to present claims 1, 2, and 3 to the Alabama Supreme Court in a timely fashion has resulted in a procedural default of those claims. See O'Sullivan, 119 S. Ct. at 1734.

Similarly, it appears that petitioner's claims 4 and 5 were never properly presented for discretionary review and are procedurally defaulted on the basis of O'Sullivan.[1]   However,

---

1   The respondents make an additional argument in favor of procedural default with respect to the ineffective assistance of counsel claims (claims 4 and 5).  Respondents assert that the claims are procedurally defaulted because the Alabama Court of Criminal Appeals refused to review the merits of those claims based on a finding that the petitioner failed to plead the allegations with the requisite specificity, thereby creating a procedural default under Rule 32.6.  An examination of the petitioner's original Rule 32 petition, however, reveals that the petitioner pleaded his claims with sufficient specificity that his claims could be identified and defended against.  Therefore, this court concludes that the Alabama Court of Criminal Appeals applied Rule 32.6 in an arbitrary fashion, and petitioner's

7

because it is at least possible that the Alabama Supreme Court invoked Rule 39 because the claims do not fit within the parameters of reviewable claims, then the discretionary review was not "available" to petitioner and his claims for ineffective assistance of trial and appellate counsel are due to be addressed on the merits. Therefore, the court examines claims 4 and 5 on the merits, *infra*.[2]

## 2. 'Cause and Prejudice'

If a petitioner has procedurally defaulted on a constitutional claim, he is barred from litigating it in a federal habeas corpus proceeding unless he can show adequate "cause" for and "actual

----

claims 4 and 5 should not be deemed procedurally defaulted on that basis. See Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988)(Where the procedural bar upon which the state rests its decision is not "adequate," the federal court may find that the issue is not barred). In this case, the Alabama Court of Criminal Appeals applied its procedural bar in a way that was clearly arbitrary and contrary to the weight of Alabama authority. Id. at 587 (a state procedural ground is not "adequate" unless it is strictly or regularly followed).

2    Petitioner's other claims set forth in the Rule 32 petition, relating to change of venue and corroborative evidence, are repetitive of claims raised in the direct appeal. Therefore, they are clearly procedurally defaulted, as discussed *supra*, and will not be addressed on the merits.

prejudice" from the default.   Wilson v. Jones, 902 F.2d 923, 925
(11th Cir. 1990); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 1558, 71
L. Ed. 2d 783 (1982); Wainwright v. Sykes, 433 U.S. 71, 97 S. Ct.
2497, 53 L. Ed. 2d 594 (1977).   The "cause and prejudice" test of
Engle v. Isaac and Wainwright v. Sykes is in the conjunctive;
therefore, petitioner must prove both cause and prejudice.   The
United States Supreme Court summarized the "cause" standard in the
following manner:

> In Wainwright v. Sykes, 433 U.S. 72 (1977), this Court
> adopted the "cause and prejudice" requirement of Francis
> v. Henderson, supra, for all petitioners seeking federal
> habeas relief on constitutional claims defaulted in state
> court.   The Sykes Court did not elaborate upon this
> requirement, but rather left open "for resolution in
> future decisions the precise definition of the 'cause'-
> and-'prejudice' standard."   433 U.S. at 87.   Although
> more recent decisions likewise have not attempted to
> establish conclusively the contours of the standard, they
> offer some helpful guidance on the question of cause.   In
> Reed v. Ross, 468 U.S. 1 (1984), the Court explained that
> although a "tactical" or "intentional" decision to forgo
> a procedural opportunity normally cannot constitute
> cause, id. at 13-14, "the failure of counsel to raise a
> constitutional issue reasonably unknown to him is one
> situation in which the [cause] requirement is met."   Id.
> at 14.   The Court later elaborated upon Ross and stated
> that "the existence of cause for a procedural default
> must ordinarily turn on whether the prisoner can show
> that some objective factor external to the defense
> impeded counsel's efforts to comply with the State's
> procedural rule."   Murray v. Carrier, 477 U.S. 478, 488
> (1986).   We explained that "a showing that the factual or
> legal basis for a claim was not reasonably available to

counsel, . . . would constitute cause under this standard." Ibid. (Citations omitted.)

Amadeo v. Zant, 486 U.S. 214, 221-22, 108 S. Ct. 1771, 100 L. Ed. 2d 249 (1988).

The petitioner must also demonstrate that he was prejudiced; he must show "not merely that the errors ... created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)(emphasis in original). A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (quoting, respectively, Engle, 456 U.S. at 135, and Murray, 477 U.S. at 496).

The petitioner has not shown "cause and prejudice" for excusing the procedural default nor has he made a showing of factual innocence so that the claims can be considered under the "fundamental miscarriage of justice" exception to procedural

default.  He has offered no explanation for his failure to present his claims to the Alabama Supreme Court for discretionary review, except to argue that the rationale behind the O'Sullivan opinion was "unforeseeable" to the petitioner and should be applied only prospectively to claims that could be appealed after the date of the opinion.   Such rationale did not prevent the claims in O'Sullivan from being barred and will not prevent the procedural bar from applying in the instant case.

Finally, petitioner has failed to make any showing of actual innocence that could warrant consideration of the claims despite his procedural default of them.  Thus, all of petitioner's claims are due to be denied as procedurally defaulted.   In the alternative, claims 4 and 5 will be addressed on the merits.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received ineffective assistance of counsel because: (1) his trial attorney failed to object to: (a) improper jury instructions concerning the burden of proof on the issue of intent; (b) the introduction of petitioner's prior bad acts; (c) the judge's ruling on questions about a witness's alleged bias; (d) testimony concerning petitioner's post-

arrest silence; and (2) his appellate counsel failed to raise on appeal the omissions of trial counsel, as set forth *supra*.

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

In order to show ineffectiveness of counsel, a habeas petitioner must demonstrate that his attorney's performance fell

below "an objective standard of reasonableness," 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. The effectiveness or ineffectiveness must be evaluated by consideration of the totality of the circumstances. Stanley v. Zant, 697 F.2d 955, 962 (11th Cir. 1983). The court must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation. Stone v. Dugger, 837 F.2d 1477 (11th Cir. 1988).

If counsel decides not to present certain evidence or chooses a certain defense because of a strategic or tactical decision, the court must afford a strong presumption of correctness to the decision, which is "virtually unchallengeable." Smith v. Dugger, 840 F.2d 787, 795 (11th Cir. 1988); Elledge v. Dugger, 823 F.2d 1439, 1444 (11th Cir. 1987). If the evidence was not presented due to oversight or inability, then the court must determine whether

13

there is a reasonable probability that the result would have been different had the lawyer not erred.  <u>Middleton v. Dugger</u>, 849 F.2d 491, 493 (11th Cir. 1988).

### 1.  Jury Instruction on Intent

The petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to object to the trial court's jury instructions on the issue of intent.  Petitioner bases this claim on his contention that the jury instructions given by the court effectively shifted the burden of proof onto the defendant, in violation of <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and <u>Francis v. Franklin</u>, 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985).  Specifically, the petitioner alleges that the trial court's instructions were objectionable because they shifted the burden of proof on the robbery, attempted murder, and conspiracy charges by stating that:

> The law of the State of Alabama presumes that a person intended to do that which he has done.

While the court acknowledges that the language of the instruction is somewhat troubling, it must be noted that the

14

petitioner has taken the court's language out of context.   On the

robbery charge, the court explained:

> Intent is an element of this offense.   A person acts
> intentionally with respect to a result or to conduct when
> his purpose is to cause that result or to engage in that
> conduct.   The law of the State of Alabama presumes that
> a person intended to do that which he has done.   Intent
> is a state of mind, and it is not easily susceptible to
> objective proof.   In making a determination of whether
> the defendant possessed the required intent, you may take
> into consideration the acts and any other conduct that
> you find from the evidence that the defendant engaged in.
> You may draw reasonable inferences regarding the
> defendant's intent from his words, acts or conduct. ...
> If you find that the state has failed to prove beyond a
> reasonable doubt any one or more of the elements of the
> offense of robbery in the first degree, then you cannot
> find the defendant guilty of robbery in the first
> degree....

In relation to the attempted murder charge, the court again

described the requisite intent, stating:

> A person commits the crime of attempted murder if, with
> the intent to commit that offense, he does any overt act
> towards the commission of that offense.   To convict, the
> State must prove beyond a reasonable doubt each of the
> following elements of the offense of attempted murder.
> Number one, that the defendant, Johnny Howard Smith,
> intended to commit the crime of murder, and two, that
> acting with the intent to commit the crime of murder, the
> defendant did an overt act toward the commission of that
> offense.... In Alabama, a person commits the crime of
> attempted murder if he intends to cause the death of
> another person and does any overt act towards the

commission of that intent.  A person acts intentionally once again with respect to a result when his purpose is to cause that result or engage in that conduct.  Intent to kill can be proven or inferred by the use of a deadly weapon or a dangerous instrument. ...

In charging the jury on the conspiracy to commit robbery charge, the court stated:

> To convict, the State must prove beyond a reasonable doubt each of the following elements of criminal conspiracy. ... that the defendant entered into the agreement with Barry Donald Congo, Johnny Ray Hastings and Melissa Smith with the intent that conduct constituting the offense of robbery would be engaged in.... Intent is an element of the offense of criminal conspiracy, and the same instructions that I have previously given you regarding intent apply here.  Once again a person acts intentionally with respect to a result or to conduct when his purpose is to cause that result or engage in that conduct. Once again a person is presumed to have intended to do that which he did. ... If you find from the evidence that the State has proved beyond a reasonable doubt each of the above elements of the offense of criminal conspiracy to rob as charged, then you shall find the defendant guilty. ...

In addition, the court repeatedly reiterated that the burden of proving each element of each offense was on the State, and that if the State failed to "prove beyond a reasonable doubt each of the ... elements" of the crimes, then the jury should find the defendant not guilty.

16

When viewed in the context of the entire instruction given, it is clear that the court properly informed the jury that the burden of proving each element of each crime, including the element of intent, was on the State.  In evaluating the constitutionality of a jury charge, the court should not look to the language complained of in isolation, but rather in the context of the entire instruction.  <u>Francis</u>, 105 S. Ct. at 314; <u>see also</u> <u>Victor v. Nebraska</u>, 511 U.S. 1, 19, 114 S. Ct. 1239 (1994).  The issue then becomes whether it is "reasonably likely" that the jury would have interpreted the instruction in a way that would violate the petitioner's constitutional rights.  <u>Victor</u>, 511 U.S. at 19.  More clearly, the court in <u>Francis</u> stated that the analysis does not end with an examination of whether the offending words "could reasonably" have been understood to relieve the state of its burden, but whether the entire instruction could have caused a reasonable juror to create an unconstitutional presumption.  471 U.S. at 315.

When viewed in context, it is clear that a reasonable juror could not have interpreted the instruction complained of by the petitioner to have shifted the burden of proof onto the defendant. The court reiterated several times that the state had the burden of

17

proving each element of each crime.  Furthermore, the instruction made clear that the guilty verdict was dependent upon the State's meeting its burden of proof.  The instruction further clarified that the juror may "infer" intent, and it has been determined that such "permissive inference" does not serve to shift the burden of proof.  See Francis, 471 U.S. at 314.

Consequently, the language of the jury instructions about which the petitioner complains was not erroneous, and petitioner's attorney acted reasonably in declining to object to the charge. Therefore, petitioner's claim 4(a) is due to be denied as without merit.

### 2.  Introduction of Prior Bad Acts

The petitioner claims that his trial counsel provided ineffective assistance in that he failed to object to testimony by his daughter that she hit him.  Counsel should have objected to this testimony, petitioner asserts, because the statements constituted inadmissible evidence of prior bad acts.  The court first notes that the "bad acts" testified to appear to have occurred during the course of the conspiracy to commit robbery and, therefore, do not qualify as "prior" bad acts and are not covered by the evidentiary prohibition.  Moreover, the petitioner failed to

18

demonstrate that counsel's performance caused prejudice to the defense as required under <u>Strickland</u>.  To establish the prejudice prong of a claim of ineffective assistance, the petitioner must show that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different.  Given the amount of evidence of the petitioner's guilt, there is no such reasonable probability in this case. Consequently, this claim is due to be denied.

### 3.  Bias of the Witness

Petitioner asserts that his trial counsel was ineffective in that she failed to adequately cross-examine state's witness Barry Congo.  Specifically, petitioner points out that the court sustained an objection to defense counsel's question about the length of Congo's sentence.  The court finds that this claim is without merit.  Although the court prevented the witness from telling the jury the length of his sentence on his prior charges, the defense counsel succeeded in eliciting the following:

Q:   But you've been promised something by the District
     Attorney, haven't you, if you testify today?

A:   Have I been promised anything?

Q:   Yes.

19

A:   Not really.

Q:   Have you signed an agreement?

A:   I haven't signed nothing yet.

Q:   Has the District Attorney told you that you'll be getting a light sentence if you testify today?

A:   It's possible.

Moreover, on direct examination, the state brought forth the following testimony:

Q:   Mr. Congo, have you ever been convicted of a crime?

A:   Yes, sir.

Q:   Where do you live?

A:   Gurley, Alabama.

Q:   Where have you lived for the last ten months?

A:   In the Madison County Jail.

Q:   And why is that?

A:   It's because I was charged on the Ms. Eunice case.

...

Q:   And you're charged with the same thing Mr. Smith is, aren't you?

A:   Yes, sir.

20

Q:   For giving your testimony, for telling the truth, what is it that you're to receive in return?

A:   A life sentence.

Taking Congo's testimony in its entirety, it is clear that the jury had sufficient testimony before it from which it could infer that Congo was biased against the petitioner, and was testifying in order to obtain a lighter sentence.  Furthermore, petitioner does not assert that defense counsel failed to argue the witness's bias in her closing argument.

In sum, the petitioner has failed to demonstrate that counsel's performance caused prejudice to the defense, as required under Strickland.  To establish the prejudice prong of a claim of ineffective assistance, the petitioner must show that but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different.  Given the fact that Congo's testimony is corroborated by that of other witnesses, and there exists substantial other evidence of the petitioner's guilt, there is no such reasonable probability in this case.  Consequently, this claim is due to be denied.

4.  Post-Arrest Silence

The petitioner contends that he received ineffective assistance of trial counsel because his attorney failed to object to the prosecutor's question to witness Howard Turner, a police officer, which elicited a response that the petitioner claims was an improper comment on petitioner's post-arrest silence.   The testimony in question is as follows:

Q:   Did you have occasion to confront Johnny Smith?

A:   Yes, sir, I did.

Q:   And were you there when Miranda Warnings were given to him?

A:   Yes, sir.

Q:   And what information did you gain as a result of that interview?

A:   Not anything.   I talked to Johnny on the afternoon, the late afternoon, of the 19th, and he told me he wasn't aware of Eunice being robbed until that same morning when he had heard it from Dorothy, or Dot, I guess is his mom.

This claim is clearly without merit.  The testimony complained of neither states nor implies that the petitioner remained silent; moreover, the testimony provides exculpatory evidence.  In order to prevail on this claim, the petitioner first must show that

counsel's failure to object was unreasonable.   A fundamental prerequisite, then, is that the statement itself must have been objectionable.   The petitioner has failed to demonstrate that the statement was objectionable, and petitioner has further failed to show that the statement worked to his prejudice.  Accordingly, this claim of ineffective assistance is due to be denied.

### 5.  Failure to Raise Issues on Appeal

Finally, the petitioner asserts that he received ineffective assistance of counsel on appeal.  His claim is based on the sole contention that appellate counsel performed unreasonably in failing to raise the specific issues set forth in petitioner's habeas petition as claims 4(a) through (d) and discussed *supra*.  In order to prevail on this claim, the petitioner first must show that counsel's failure to assert the issues on appeal was unreasonable. A fundamental prerequisite, then, is that the issues have some merit.  The petitioner has failed to demonstrate that any claims alleging ineffective assistance of trial counsel have any merit; accordingly, petitioner's derivative claim asserting ineffective assistance of counsel on appeal likewise is due to be denied.

## CONCLUSION

Accordingly, for the reasons stated above, the petition for writ of habeas corpus under 28 U.S.C. § 2254 is due to be denied and dismissed with prejudice.  A separate order will be entered.

DATED this 29th day of __March__, 2000.


WILLIAM M. ACKER, JR.
SENIOR U.S. DISTRICT JUDGE

24